**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION                        Adv. Pro. No. 08-01789 (BRL)
CORPORATION,
                           Plaintiff,
               v.                                      SIPA Liquidation

BERNARD L. MADOFF INVESTMENT                          (Substantively Consolidated)
SECURITIES LLC,

                           Defendant.
-----------------------------------------------------------------X
In re:

BERNARD L. MADOFF,

                           Debtor.
-----------------------------------------------------------------X
IRVING H. PICARD, Trustee for the liquidation         Adv. Pro. No. 10-04355 (BRL)
of Bernard L. Madoff Investment Securities LLC,

                           Plaintiff,
     v.

FRED A. DAIBES MADOFF SECURITIES
TRUST,

                           Defendant.
-----------------------------------------------------------------X

Before: Hon. Burton R. Lifland
         United States Bankruptcy Judge

**BENCH MEMORANDUM DECISION AND ORDER DENYING DAIBES' MOTION TO**
**DISMISS FOR INSUFFICIENT SERVICE OF PROCESS**

      Before the Court is the motion (the "Motion to Dismiss") of the Fred A. Daibes Madoff

Securities Trust (the "Defendant,") to dismiss the complaint filed by Irving H. Picard, Esq. (the

"Trustee"), trustee of the SIPA liquidation of Bernard L. Madoff Investment Securities LLC

("BLMIS"), for insufficient service of process pursuant to Federal Rules of Civil Procedure

1

("Rule") 4(m) and 12(b)(5), incorporated herein by Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 7004 and 7012. Upon review of the papers and after oral argument, the Motion to Dismiss is DENIED.

## BACKGROUND

On November 30, 2010, the Trustee filed a complaint (the "Complaint") against the Defendant and the Guardian Trust Company, FSB (the "Guardian Trust")[1] in its capacity as administrative trustee of the Defendant, seeking to (i) avoid and recover alleged preferential transfers in the amount of $14,000,000 from BLMIS to the Defendant and (ii) temporarily disallow the customer claim of the Defendant (the "Customer Claim") pursuant to section 502(d) of the Bankruptcy Code. This resulted in a March 30, 2011 deadline for service.

On February 1, 2011, the same day the Clerk of the Court issued the Summons and Notice of Pretrial Conference (the "Summons," and together with the Complaint, the "Service Materials"), the Trustee mailed copies of the Service Materials via first class mail to the Defendant at (i) an address set forth on multiple customer claim forms filed by the Defendant (the "Claims Forms Address"), as well as (ii) an address believed to be that of the grantor of the Defendant, Fred A. Daibes ("Daibes").[2] The Trustee also sent the Service Materials to the Guardian Trust. Despite being sent to three different addresses, none of the Service Materials were returned to the Trustee as undeliverable. In addition, none of seventeen other mailings sent to the Claims Form Address, both before and after the Service Materials, were returned to the Trustee as undeliverable.

---

[1] On March 21, 2011, Guardian Trust was dismissed from this adversary proceeding. *See* Declaration of Peter B. Shapiro in Support of Trustee's Objection to The Motion to Dismiss (Dkt. No. 11), Ex. D.

[2] According to the Trustee, he conducted a search to determine this address because the address associated with Defendant's BLMIS account was a P.O. Box, and, under Bankruptcy Rule 7004(b), service cannot be effectuated by mailing the summons and complaint to a P.O. Box. Despite this due diligence, Defendant disputes the accuracy of this address. But this dispute is inconsequential because Defendant concedes the Claims Form Address was accurate.

2

The Trustee's agent for serving process filed an affidavit of service on February 1, 2011. Later that day, counsel for the Defendant, Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), advised the Trustee that they would accept service on behalf of the Defendant.

In March 2011, the Defendant requested an extension of time to respond to the Complaint, which the Trustee granted on March 25, 2011. The Trustee contends it was only on May 3, 2011 that he was informed for the first time that Defendant did not receive the Service Materials. Defendant counters that on May 3, 2011, the Trustee's counsel called to inquire whether Kramer Levin had been served, thus implying the Trustee knew about the service issues prior to that date. Later that month, Defendant's counsel refused to grant a waiver of the 120-day time limit for service to the Trustee.

The issue before the Court is whether the Trustee properly effectuated service on Defendant pursuant to the Rules. The Trustee argues in the affirmative, claiming that (i) as conceded by the Defendant, the Service Materials were properly directed to the Claims Form Address and (ii) neither the Service Materials nor the seventeen other filings sent by the Trustee to the Claims Form Address were returned to the Trustee as undeliverable. Defendant denies ever having received the Service Materials and describes its internal mail procedures. The Court finds that the Trustee properly effectuated service on the Defendant. Accordingly, Defendant's Motion to Dismiss is DENIED.

## DISCUSSION

### I. THE TRUSTEE PROPERLY EFFECTUATED SERVICE ON DEFENDANT

The Trustee properly effectuated service on Defendant because the Trustee is entitled to the benefit of the mailbox presumption and the Defendant has failed to rebut this presumption.

A. <u>The Trustee Is Entitled To The Benefit Of The Mailbox Presumption</u>.

The Trustee is entitled to the benefit of the mailbox presumption. It is a long-standing rule that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932); *see also Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004) (holding that when a party "provides evidence that the notices . . . were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received"); *Ms. Interpret v. Rawe Druck–und–Veredlungs–GMBH (In re Ms. Interpret)*, 222 B.R. 409, 413–14 (Bankr. S.D.N.Y. 1998) ("Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail.").

Here, as conceded by Defendant's counsel, the Service Materials were "properly directed" to the Claims Form Address. *See* Trustee for the Guardian Trust Reply Brief of Fred A. Daibes Madoff Securities Trust [hereinafter the "Reply"] (Dkt. No. 14), ¶ 6 (acknowledging the Claims Form Address "was a proper address for service on the Defendant"). Moreover, the Defendant does not dispute the accuracy of the Guardian Trust address, where the Service Materials were also sent. *See id.* In addition, the Service Materials were "placed in a post office": they were sent via first class mail in accordance with proper service procedures. *See* The Trustee's Objection To Fred A. Daibes Madoff Securities Trust's Motion to Dismiss (Dkt. No. 10), ¶ 6 ("[C]opies of the Summons and Complaint were sent via First Class Mail to Guardian Trust and to defendant Defendant at two addresses."). Furthermore, despite being sent to three different addresses, the Service Materials were never returned to the Trustee as undeliverable. In fact, seventeen mailings other than the Service Materials sent by the Trustee to

4

the Claims Form Address, both before and after the Materials were sent, were also not returned as undeliverable. Taking the above in tandem, it is highly improbable that Defendant did not receive the Service Materials. *See In re Dana Corp.*, No. 06-10354, 2007 WL 1577763, at *5 (Bankr. S.D.N.Y. May 30, 2007); *In re Robinson*, 228 B.R. 75, 83 (Bankr. E.D.N.Y. 1998) ("It is highly unlikely that . . . properly addressed notices [were] lost in the mail."). The Trustee is therefore entitled to invoke the mailbox presumption.

      B.      <u>The Defendant Has Not Rebutted The Mailbox Presumption</u>.

As the Trustee has provided "proof that the [properly directed] letter . . . had been placed in the post office for transmission," the burden shifts to the Defendant to rebut the presumption that the letter was received. *Hagner*, 285 U.S. at 431. Yet the Defendant has failed to do so.

Generally speaking, "[w]hile the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary." *Dana Corp.*, 2007 WL 1577763, at *4. A "mere denial of receipt does not rebut [the] presumption." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985); *see also In re Ricketts*, 80 B.R. 495, 497 (9th Cir. BAP 1987) ("If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would become unraveled."); *BASF Corp. v. Norfolk Southern Railway Co.*, No. 04-CIV-9662, 2008 WL 678557, at *5 (S.D.N.Y. Mar. 10, 2008) (providing affidavits merely "attesting that [the Defendant's] declination letter was not received [do not] rebut the presumption of receipt."); *Cablevision Sys. Corp. v. Malandra (In re Malandra)*, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997) (emphasizing that federal courts in New York "hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt"). Similarly,

5

courts do not accept rebuttals that merely set forth hypotheticals or general descriptions of mail handling procedures or business routines. *See CUNA Mutual Ins. Group v. Williams (In re Williams)*, 185 B.R. 598, 600 (9th Cir. BAP 1995) (finding inadequate evidence describing only a "business routine regarding receipt of mail"); *Malandra*, 206 B.R. at 670, 674 (finding rebuttal insufficient where affidavits merely (i) recounted the recipient's mail processing procedures, (ii) averred that had the relevant document been received it would have been seen, and (iii) denied receipt); *In re Hobbs*, 141 B.R. 466, 467, 469 (Bankr. N.D. Ga. 1992) (concluding that affidavits were "essentially unsupported general denials" where they only stated the forwarding procedures of the relevant entities "and that the employees [had] no recollection of receiving such notices"); *In re STN Enters., Inc.*, 94 B.R. 329, 335 (Bankr. D.Vt. 1988) (holding creditor's attempted rebuttal did not overcome the presumption of receipt where the mailing "address was only 'slightly incorrect,' the notice was never returned to debtor's attorney as undelivered, and [the creditor] had received other mailings from debtor's attorney at the incorrect address").

Indeed, a party can bolster evidence aimed at rebutting the presumption of receipt with (i) testimony from individuals who directly handled the service package whose delivery is in dispute or (ii) specific relevant facts regarding the service package's sender or courier, or its recipient's safeguards to ensure its proper handling. *See Robinson*, 228 B.R. at 82 (finding respondents failed to rebut the presumption where they did not provide, *inter alia*, (i) an "affidavit from any person *directly* involved in the mail handling procedures" or (ii) any information regarding "procedural safeguards [used] to ensure that the notices are appropriately handled") (emphasis added)); *CUNA Mutual*, 185 B.R. at 600 (indicating (i) proof that none of the listed creditors received notice or that the mail was returned or (ii) a clerk's office employee testifying that notice was not sent could ameliorate otherwise insufficient evidence regarding a

6

business routine for receipt of mail); *see also Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) (distinguishing between merely denying receipt and averring that, because of the incomplete address, the postal service could not deliver the notice of bankruptcy to its post office box).

Here, Defendant has failed to rebut the mailbox presumption for two principal reasons. <u>First</u>, in its Motion to Dismiss, Defendant relied on a declaration (the "First Declaration") solely denying receipt of the Service Materials. *See* Motion to Dismiss, ¶ 4 ("[T]he Defendant never received the package in the mail."). And denials of receipt are insufficient to rebut the presumption. *See Meckel*, 758 F.2d at 817; *BASF Corp.*, 2008 WL 678557, at *5; *Malandra*, 206 B.R. at 673.

<u>Second</u>, the declaration upon which the Defendant relies in its Reply is likewise unpersuasive. *See* Declaration of Michael McManus in Further Support of Motion of Fred A. Daibes Madoff Securities Trust to Dismiss the Complaint (the "Second Declaration") (Dkt. No. 15). Defendant attempts to show that it "'had and followed a particular internal procedure for recording receipt of mail' but nevertheless did not receive the [Service Materials]." Reply, ¶ 5 (*citing In re Enron Corp*, No. 01–16034, 2003 WL 21756785, at * 6 (Bankr. S.D.N.Y. July 30, 2003); *Robinson*, 228 B.R. at 83). In support, Defendant provided testimony from the Chief Operating Officer of Daibes Enterprises, Michael McManus ("McManus"):

> In accordance with Daibes Enterprises' standard procedure, all mail addressed to [the Claims Form Address] is picked up by an employee of DBR Management on a daily basis from the United States Post Office . . . . The Mail is then sorted by DBR Management and distributed to the addressee. Mail addressed to the Defendant would have been delivered to the executive assistant to Fred A. Daibes. As set forth in the Declaration of Fred A Daibes in Support of the Motion to Dismiss, neither he, nor his employees or agents ever received an envelope from [the Trustee's agent for serving process] containing the [Service Materials]. In addition, I have caused the files maintained for the Defendant to be searched and a copy of the [Service Materials is] not in the files.

7

Second Declaration, ¶ 3. But the Second Declaration is similar to several other declarations or affidavits rejected by courts as unable to rebut the presumption. *See, e.g.*, *Robinson*, 228 B.R. at 82; *Malandra*, 206 B.R. at 670, 674; *Hobbs*, 141 B.R. at 467, 469; *see also CUNA Mutual*, 185 B.R. at 600. Specifically, the Second Declaration does not elucidate whether McManus has direct involvement in the mail handling procedures, or whether he has direct oversight over DBR Management. *See Robinson*, 228 B.R. at 82. In addition, the Defendant does not specify any procedural safeguards it has in place to ensure that mail is properly handled. *See id.* Finally, it is unclear when the above-mentioned search was conducted; the Second Declaration was filed on November 21, 2011, leaving open the possibility that any search for the Service Materials was conducted more than nine months after they were sent. The Second Declaration appears to be nothing more than a statement of non-receipt. As such, Defendant has failed to rebut the presumption or receipt.

As the Trustee is entitled to the benefit of the mailbox presumption, which the Defendant has failed to rebut, the Court finds that service was properly effectuated. *See Qing Hai Lin v. Mukasey*, 254 Fed. Appx. 875, 876–77 (2nd Cir. 2007) (finding the Board of Immigration Appeals "appropriately found [the defendant] received proper notice of his hearing date" where notice was sent to "his address of record" and he "failed to present any evidence to rebut the presumption of receipt").

In sum, the Court finds that the Trustee properly effectuated service on the Defendant as service was "properly directed" to the Claims Form Address via first class mail in accordance with proper service procedures. In fact, the Trustee sent not only the Service Materials, but also seventeen other filings to this address and not one was returned to the Trustee as undeliverable. Therefore, the mailbox presumption stands in favor of the Trustee, and since the Defendant has

8

been unable to rebut the presumption, the Court finds that the Trustee properly effectuated service on the Defendant.

## **CONCLUSION**

Accordingly, the Defendant's Motion to Dismiss for insufficient service of process is hereby DENIED.

**IT IS SO ORDERED.**

Dated: New York, New York
December 1, 2011

/s/ Burton R. Lifland
United States Bankruptcy Judge